The PEOPLE of the TERRITORY of GUAM, Plaintiff–Appellee,

v.

Vincente R. CEPEDA, Defendant–Appellant.

No. 94–10535.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 17, 1995.

Decided Oct. 31, 1995.

Joaquin V.E. Manibusan, Jr., Agana, Guam, for defendant-appellant.

Alicia A. Limtiaco, Deputy Attorney General, Richard Parker Arens, Assistant Attorney General, Agana, Guam, for plaintiff-appellee.

Before: FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.

POOLE, Circuit Judge:

Vincente Cepeda appeals his convictions for two counts of second-degree robbery and one count of theft by receiving stolen property. He argues that the trial court erred in admitting certain hearsay, and that the government failed to prove elements necessary to one of the robbery convictions and the theft by receipt conviction. We have juris-

diction pursuant to 48 U.S.C. § 1424–3(c). We conclude that Cepeda was charged with robbery using the wrong unit of prosecution, and reverse one of his robbery convictions. We affirm in all other respects.

## I

Vincente Cepeda, a Guam prisoner, received permission to visit his ailing mother on August 1, 1990. During the course of the visit, he escaped from custody. The next day, police discovered that a Toyota Corolla had been stolen. The Corolla was later recovered in the Guam Department of Corrections parking lot. Cepeda was seen driving the Corolla and leaving it in the DOC parking lot.

Two robberies occurred on August 14. Police subsequently arrested Cepeda and Carmelo Mediola. According to Mediola, he and Cepeda drove to a Maite convenience store. Cepeda indicated he was going to rob the store, took a pellet gun in, and returned with various food items, cash, and food stamps. Cepeda then directed Mediola to drive to a second store in Mangilao, the Young Market. Cepeda again went in with the gun, and returned with liquor.

Within one minute of the Maite robbery, Sean Park entered the store. Park called the police when he learned of the robbery. An officer arrived within one minute, while Park was still on the phone. Park then stayed and translated between the proprietors, who spoke Korean, and the police, who spoke English. The proprietors described the robber, including the fact that he had tattoos, and indicated in which direction he had fled. Park was allowed to testify regarding these statements.

At the Mangilao store, two people, Jaycee Choi (an employee) and Kimberley Bundy, were behind the counter. They testified that a man pulled a gun on them and demanded the store's cash. Choi opened the cash register. The robber then left with money and two bottles of liquor.

Cepeda was indicted on three counts of second-degree robbery (two arising out of the Mangilao robbery), one count of theft by receiving stolen property (for possessing the

Corolla), and one count of felony escape. He was convicted on all counts. Cepeda was sentenced to 20–year terms for each of the theft and robbery convictions, with the two Mangilao convictions running concurrently, and a 10–year term for felony escape. He appealed to the Appellate Division of the District Court of Guam. The Appellate Division affirmed, ruling that Park could relate the Maite robbery victims' statements under the excited utterance hearsay exception, and that Cepeda could be convicted of two counts of robbery for the Mangilao holdup because he threatened two people. Cepeda has timely appealed. We review de novo the decisions of the Appellate Division. *Guam v. Yang,* 850 F.2d 507, 509 (9th Cir.1988) (en banc).

## II

Cepeda challenges the admission of Sean Park's testimony under both the Guam Rules of Evidence and the Sixth Amendment's Confrontation Clause. We find no error under either provision.

### A

██ Park's testimony was admitted under 6 G.C.A. § 803(2), which provides:

**Hearsay Exceptions; Availability of Declarant Immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(2) **Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

This provision is identical to the Federal Rules' "excited utterance" exception, and should be interpreted just as Fed.R.Evid. 803(2) is. *See Guam v. Ignacio,* 10 F.3d 608, 611 (9th Cir.1993). We review the trial court's decision to admit evidence under a hearsay exception for an abuse of discretion. *United States v. Valdez–Soto,* 31 F.3d 1467, 1469–70 (9th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 859 (1995).

■ For a statement to be admitted under Rule 803(2), two requirements must be met: "First, there must be some occurrence or event sufficiently startling to render normal reflective thought processes inoperative. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *United States v. McLennan,* 563 F.2d 943, 948 (9th Cir.1977) (quoting *McCormick on Evidence* (2d ed.) § 297), cert. denied, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978). Cepeda concedes that the first requirement has been met: the declarants were the victims of an armed robbery. The principle question, then, is whether the statements recounted by Park were the product of stress and excitement, or reflection and possibly fabrication. *See Morgan v. Foretich,* 846 F.2d 941, 947 (4th Cir. 1988).

■ Much of the admitted hearsay involved statements in response to police questions. Cepeda argues that responses to questioning must necessarily be the product of reflection and, therefore, the responses offered could not have been properly admitted. We disagree. To the contrary, "[d]eclarations relating to the circumstances of a violent crime, made by the victim shortly after its occurrence ... may be admissible although made in response to an inquiry." *United States v. Glenn,* 473 F.2d 191, 194 (D.C.Cir.1972); *accord United States v. Martin,* 59 F.3d 767, 769–70 (8th Cir.1995); *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1058 (6th Cir.1983), cert. denied, 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984); *United States v. Iron Shell,* 633 F.2d 77, 85 (8th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *McCurdy v. Greyhound Corp.,* 346 F.2d 224, 225–26 (3d Cir.1965); *see also United States v. Lim,* 984 F.2d 331, 336 (9th Cir.) (holding statements made during arrest, including one in response to question, admissible under excited utterance exception), cert. denied sub nom. *Lim v. United States,* —— U.S. ——, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993). The fact that a statement is made in response to a question is one factor to weigh in considering the statement's admissibility, but it does not per se bar admission. *Iron Shell,* 633

F.2d at 85–86; *Haggins,* 715 F.2d at 1058. Instead, we must also consider various other factors, including timing, age of the declarant, characteristics of the event, and the subject matter of the statements. *United States v. Rivera,* 43 F.3d 1291, 1296 (9th Cir.1995). Each of these is but an aid to assist in deciding the ultimate question, whether the statement was the product of stress and excitement or reflective thought.

■ On this record, we conclude that the district court did not abuse its discretion in admitting Park's testimony. In the course of the robbery, the owner had a gun pointed at her baby. Park testified that the robbery victims were "quite panic[ked]." RT 4/27/93 at 126. When he arrived, they were screaming. Even after the police arrived within a matter of minutes, the robbery victims spoke simultaneously and in a disorderly fashion. "Testimony that the declarant appeared excited when the statement was made and that there was a reasonable basis for this continuing excitement may be sufficient." *United States v. Moore,* 791 F.2d 566, 572 (7th Cir. 1986). The victims' statements were made within minutes of the robbery. We consider this easily soon enough to satisfy the exception's "nearly contemporaneous" requirement. *Bemis v. Edwards,* 45 F.3d 1369, 1372 (9th Cir.1995). In light of Park's testimony regarding the declarants' manner, the trial court could credit statements made within minutes of an armed robbery as having been made while still under the influence of stress and excitement. The trial court did not abuse its discretion.

■ Cepeda also argues that the victims' statement that the robber had tattoos should not be admissible because it did not describe the robbery or the robber's conduct. However, "[a]lthough the subject matter of an excited utterance is frequently a description of the 'startling event,' the statement need only 'relat[e] to' the startling event." *Bemis,* 45 F.3d at 1372, n. 1; *see also Moore,* 791 F.2d at 572 ("The excited utterance exception allows a broader scope of subject matter coverage than does the present sense impression exception, which limits the subject matter of the statement to a description or expla-

nation of the event."). Here, the declarant's statement that the robber had tattoos clearly related to the startling event, the robbery. We see no basis for excluding that statement on the basis of its subject matter.

## B

██ Cepeda also challenges the admissibility of Park's testimony under the Confrontation Clause. The Confrontation Clause and hearsay rule are not coextensive, and involve different standards of admissibility. *Swan v. Peterson,* 6 F.3d 1373, 1379 (9th Cir.1993), cert. denied, —— U.S. ——, 115 S.Ct. 479, 130 L.Ed.2d 393 (1994). Our review here, unlike under the Federal Rules of Evidence, is de novo. *United States v. Garcia,* 16 F.3d 341, 342 (9th Cir.1994). Nevertheless, because Park's testimony was properly admitted under Guam's hearsay rule, it was also properly admitted under the Confrontation Clause.

██ Statements falling within a hearsay exception are ordinarily admissible under the Confrontation Clause if 1) the prosecution demonstrates the unavailability of the declarant, and 2) the statements are accompanied by adequate "indicia of reliability." *Idaho v. Wright,* 497 U.S. 805, 816–17, 110 S.Ct. 3139, 3147–48, 111 L.Ed.2d 638 (1990); *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *Swan,* 6 F.3d at 1379. However, the *Roberts* unavailability requirement does not apply to statements admitted under the excited utterance exception. *White v. Illinois,* 502 U.S. 346, 354–57, 112 S.Ct. 736, 741–43, 116 L.Ed.2d 848 (1992); *Ignacio,* 10 F.3d at 611 n. 1.

██ Consequently, the only issue here is whether Park's statements have sufficient indicia of reliability. "The reliability requirement is satisfied if a statement falls within a 'firmly rooted hearsay exception' or if it is supported by 'a showing of particularized guarantees of trustworthiness.'" *Swan,* 6 F.3d at 1379 (quoting *Wright,* 497 U.S. at 818, 110 S.Ct. at 3148). "When hearsay testimony is properly admitted pursuant to [a firmly rooted] exception, no further guarantees of trustworthiness are required." *United States v. George,* 960 F.2d 97, 99 (9th Cir.1992). The excited utterance exception is firmly rooted. *White,* 502 U.S. at 355 n. 8, 112 S.Ct. at 743 n. 8; *Ignacio,* 10 F.3d at 615. Even considering the matter de novo, Park's statements were properly admitted pursuant to that exception. They therefore satisfy the Confrontation Clause's reliability requirement and were properly admitted pursuant to that clause as well. *Id.* While Cepeda argues that we should require some further indication of reliability, *Wright* compels otherwise. We find no error in the admission of Park's testimony.

## III

██ Cepeda next challenges his conviction for robbery of Kimberley Bundy. He argues that, because she lacked possession or control over any of the stolen property, he could not be convicted of robbing her. We agree.

Guam's second-degree robbery statute provides in relevant part:

**2nd Degree Robbery; Defined & Punished.** (a) A person is guilty of robbery in the second degree if, in the course of committing a theft, he:

.     .     .     .     .

(2) threatens another with or intentionally puts him in fear of immediate serious bodily injury; or

(3) is armed with or displays what appears to be explosives or a deadly weapon. . . .

9 G.C.A. § 40.20(a).

The Appellate Division analyzed Cepeda's conviction under 9 G.C.A. § 40.20(a)(2). It concluded that the principle wrong that section proscribed was a crime against persons, not property. Because Cepeda had threatened multiple people in the course of one theft, he could be convicted of multiple robberies under § (a)(2). Guam raises essentially the identical argument on appeal.

We need not address the accuracy of that conclusion. As Cepeda correctly points out, he was indicted under § 40.20(a)(3). The jury was properly instructed on the elements of § (a)(3), not § (a)(2). It is with that section, then, that our analysis must begin and

end. We must decide what the appropriate unit of prosecution under § (a)(3) is: may Cepeda be convicted of two counts of robbery, or only one?

The unit of prosecution a penal statute calls for is a question of legislative intent, subject only to constitutional constraints. *See Bell v. United States,* 349 U.S. 81, 82–83, 75 S.Ct. 620, 621–622, 99 L.Ed. 905 (1955); *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). Where intent is unclear and a statute ambiguous, a rule of lenity should be applied "against turning a single transaction into multiple offenses." *Bell,* 349 U.S. at 83, 84, 75 S.Ct. at 622, 623; *Gilinsky v. United States,* 368 F.2d 487, 489–90 (9th Cir.1966).

Here, we need not reach application of the rule of lenity because § (a)(3) as applied to these facts is unambiguous. Conviction under § (a)(3) requires theft aggravated by possession or display of a deadly weapon. Under this section, a robber might arguably be subject to multiple convictions where he committed multiple thefts with the same weapon, as where, for instance, he went to a diner, flashed a gun, and robbed each patron. Here, however, Cepeda committed only one theft; he took the property of the Young Market from the possession and control of Jaycee Choi. He did so while armed. He could therefore be convicted of one count under § (a)(3). Conviction on more than one count would pose double jeopardy problems; proof of any additional counts would rest on the identical conduct, the single theft while armed. The elements of an § (a)(3) violation offer no way to split a single theft into multiple counts.

The jury in this case was never asked to determine whether Cepeda had threatened anyone. Instead, it was permitted to render a verdict of guilty upon a showing that Cepeda had "intentionally displayed what appeared to be a deadly weapon ... while in the course of committing a theft of property from Kimberley Bundy[.]" Cepeda never actually took property from Kimberley Bundy. Moreover, Cepeda's convictions for the robbery of Bundy and Jaycee Choi rested on the identical conduct. Because Cepeda committed only one theft, he could properly be convicted of only one count of robbery under § (a)(3). We therefore reverse Cepeda's conviction for the robbery of Kimberley Bundy.

## IV

Finally, Cepeda challenges his conviction for receipt of stolen goods for disposing of the Toyota Corolla. Cepeda argues that Guam must prove he received the Corolla from some third party. We are not persuaded.

The section of the Guam Code at issue reads in relevant part:

**Theft by Receiving Stolen Property; Defined.** (a) A person is guilty of theft if he intentionally receives, retains or disposes of movable property of another knowing that it has been stolen or believing that it has probably been stolen.

9 G.C.A. § 43.50(a). On its face, the statute requires proof of three elements: 1) that the defendant received, retained, or disposed of movable property; 2) that the property was stolen; and 3) that the defendant knew or believed the property had probably been stolen. Based on the evidence submitted, a rational factfinder could have found each of these elements.

Cepeda does not dispute Guam's evidence on these points, but argues instead that a fourth element must be proven: the government must show he received the stolen property from a third party. However, Cepeda only offers a treatise on criminal law as authority. We are bound by the language of Guam's statute, however, and on its face it does not contain this requirement. It may be true that Cepeda cannot be convicted both for receiving stolen goods and for stealing them, but it does not follow that he cannot be convicted of receiving stolen goods if Guam chooses to charge only that. *See People v. Price,* 1 Cal.4th 324, 3 Cal.Rptr.2d 106, 189, 821 P.2d 610, 693 (1991) (in bank) (holding under similar statute that prosecution need not prove someone else stole property, and that "receiving" conviction may be upheld despite evidence strongly suggesting that defendant also stole property), cert. denied sub

nom. *Price v. California,* —— U.S. ——, 113 S.Ct. 152, 121 L.Ed.2d 102 (1992). Absent some contrary controlling judicial interpretation, the plain language of the statute must govern. We reject Cepeda's construction of § 43.50(a).

## V

We reverse Vincente Cepeda's conviction for the robbery of Kimberley Bundy. We affirm on all other counts.

AFFIRMED IN PART, REVERSED IN PART.