78 F.3d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert Arthur HUTTENBACK, Petitioner-Appellant,
v.
Susan GIONFRIDDO; Attorney General of the State of
California, Respondents-Appellees.
 No. 95-55050.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1995.
Decided Feb. 29, 1996.
 
 Before: HUG, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert Huttenback, former Chancellor of the University of California at Santa Barbara, appeals the district court's dismissal of his petition for a writ of habeas corpus. After Huttenback used University funds to remodel his residence, he was convicted of embezzlement and tax fraud. Huttenback claims that his defense counsel's failure to disclose the simultaneous representation of an UCLA employee constituted ineffective assistance of counsel in violation of his Sixth Amendment right. The district court denied the petition on the merits, also finding the petition moot due to the termination of Huttenback's probationary sentence.
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the record does not demonstrate the existence of an actual conflict of interest on the part of Huttenback's trial counsel, we affirm the dismissal of the petition on the merits.
 
 
 4
 * As a preliminary matter, we address the district court's mootness finding. When Huttenback filed his petition on August 19, 1994, he had four weeks left of his probationary sentence, having paid the fine and performed the community service. The magistrate judge recommended dismissal of the petition without prejudice because of the existence of unexhausted claims, but granted Huttenback leave to amend. On December 29, 1993, Huttenback filed an amended petition, scratching out certain unexhausted claims. The magistrate again recommended dismissal because an unexhausted claim still appeared, and Huttenback indicated his intention to delete that claim. The magistrate then recommended and the district court ordered dismissal because, in part, Huttenback was no longer in custody.[1]
 
 
 5
 Serving his probationary sentence, Huttenback was in custody when he filed the petition. Krantz v. Briggs, 983 F.2d 961, 962 n. 1 (9th Cir.1993), overruled on other grounds, Thompson v. Keohane, 116 S.Ct. 457, 462 n. 4 (1995). When a petitioner files a petition while in custody and is later released, he is still entitled to consideration of his petition on its merits. Carafas v. La Vallee, 391 U.S. 234, 239 (1968) (habeas affords broader relief than release from custody).
 
 
 6
 Petitions for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under Federal Rule of Civil Procedure 15(c)(2), Huttenback's amended petition would have related back to the date of the original petition. Because the district court abused its discretion in not applying Rule 15(c)(2), Miller v. Laird, 464 F.2d 533, 534 (9th Cir.1972) (per curiam), we reach the merits.
 
 II
 
 7
 Huttenback claims that the simultaneous representation of Dr. Golde, an UCLA employee, by Huttenback's attorney, Anthony Murray, created an actual conflict of interest.
 
 
 8
 * Huttenback raised the conflict of interest issue in his petition to the California Court of Appeals and in his federal petition. The State argues that in the present appeal Huttenback has added specific claims not raised before.
 
 
 9
 Huttenback alleged in his federal petition that Murray:
 
 
 10
 represented Dr. David Golde and the interests [of] the University of California and who (sic) had a common interest and defense in ... Moore v. Regents.... His fees were paid in whole or in part by University of California....
 
 
 11
 The state argues that no evidence supports Huttenback's claim that the University paid his fees, indicating that the fees were paid in part by the University's insurance carrier. On appeal, Huttenback relies upon this fact and upon his more general claim that the substance of the representation created an actual conflict. We find this claim presented in his original petition. The district court's order addressed this general claim.
 
 B
 
 12
 A criminal defendant has a right to the assistance of counsel unburdened by conflicting loyalties. Glasser v. United States, 315 U.S. 60 (1942). In order to establish a Sixth Amendment violation resulting from an attorney's conflict of interest, a federal habeas petitioner must show: "(1) that counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely affected his lawyer's performance." Sanders v. Ratelle, 21 F.3d 1446, 1452 (9th Cir.1994) (citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)) (further citation omitted). A petitioner must prove an actual, not just a possible or hypothetical conflict, "through a factual showing on the record." Morris v. California, 966 F.2d 448, 455 (9th Cir.1991), cert. denied, 113 S.Ct. 96 (1992). Once a petitioner shows an actual conflict, he need only demonstrate "that some effect on counsel's handling of particular aspects of the trial was 'likely.' " United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir.1992) (citation omitted). Prejudice is presumed where a petitioner demonstrates an actual conflict and some effect on the representation. Holloway v. Arkansas, 435 U.S. 475, 490 (1978).
 
 
 13
 The California appeals court rejected Huttenback's claim of a conflict in denying the state habeas petition, and the district court adopted the facts stated by the court of appeals, agreeing with its conclusion. The ultimate conclusion regarding the existence of a conflict presents a mixed question of law and fact reviewed de novo. Sanders, 21 F.3d at 1451 (citing Strickland v. Washington, 466 U.S. 668, 698 (1984)) (further citations omitted).
 
 
 14
 The parties dispute whether the facts stated by the court of appeals and adopted by the district court receive the presumption of correctness under 28 U.S.C. § 2254(d). Findings by a state court of appeals benefit from the presumption of correctness when "the habeas applicant and the State or its agent [are] parties to the state proceeding and ... the state-court determination is evidenced by 'a written finding, written opinion, or other reliable and adequate written indicia.' " Sumner v. Mata, 449 U.S. 539, 546-47 (1981) (quoting section 2254(d)). Huttenback indicates that there was no evidentiary hearing in state court regarding the alleged conflict of interest and that the Attorney General failed to file a brief in opposition to the state habeas petition. This debate amounts to nothing, however, because the parties do not dispute the facts listed by the appellate court and we review de novo the conclusion regarding the existence of a conflict based upon the record. Cuyler v. Sullivan, 446 U.S. at 341-42.
 
 
 15
 As the California court of appeals stated, Murray represented Dr. Golde in a suit against Golde, the University of California and another UCLA employee. The University was not a party to the criminal proceeding against Huttenback, and prior to the proceeding it had entered into a civil settlement with Huttenback reimbursing it for the improper expenditures. Murray represented Golde, not the University.
 
 
 16
 To this undisputed statement of facts, Huttenback adds numerous others. He adds that Murray did not disclose the representation to Huttenback. He points to the celebrity of the Moore case and to the "joint defense" mounted by Murray and University staff attorneys. He also indicates that Murray delayed Huttenback's trial to participate in the argument of Moore's appeal. Huttenback cites to Murray's appellate brief in Moore, where Murray argued the moral blamelessness of Dr. Golde and the University. Huttenback asserts that Murray sought fees from the University. Finally, Huttenback states that he fired Murray as soon as he learned of his representation of Golde.
 
 
 17
 The State disputes only these last two assertions. The reason Murray's representation of Huttenback ceased is irrelevant to the question of a conflict. Assuming the facts as Huttenback relates them, his own perception of Murray's loyalty has no bearing on the existence of an actual conflict.
 
 
 18
 As to the payment of Murray's fees in Moore, Huttenback does not argue on appeal that the University itself paid Murray's fees directly, but contends that a letter from Murray to the University evinced an intent to seek fees from the University and therefore supports his argument regarding conflicting motives. According to Murray, the letter in fact indicates Murray's intention to sue the University for payment of Golde's fees. Murray informed the University that it should pay the fees because of the existence of a conflict of interest between Golde and the University, and a portion of the fees were paid by the University's insurance carrier. This tenuous connection weighs equally against the existence of a conflict.
 
 
 19
 Huttenback cites to cases where the simultaneous representation of a defendant in a criminal matter and the alleged victim or a prosecution witness in a civil matter presented an actual conflict. See, e.g., Ciak v. United States, 59 F.3d 296, 305 (2nd Cir.1995); McConico v. Alabama, 919 F.2d 1543 (11th Cir.1990); Rosenwald v. United States, 898 F.2d 585 (7th Cir.1990); Castillo v. Estelle, 504 F.2d 1243, 1245 (5th Cir.1974). From these cases emerges the proposition that, had Murray represented the University itself or had the matters been factually related, a conflict might have existed.
 
 
 20
 Murray did not represent the University; he represented Dr. Golde because of a potential conflict between Golde's interests and the University's interests. Although he apparently joined with the University in briefing certain common legal issues, Huttenback does not show that his interests were sufficiently tied to the University to give rise to a conflict. Huttenback cites no case where the representation of a criminal defendant and the simultaneous representation of a party aligned with the crime victim in an unrelated matter resulted in an actual conflict.
 
 
 21
 In addition, the University had settled with Huttenback and had stated to the press that it found no wrongdoing on his part. It was not a typical crime victim.
 
 
 22
 Finally, Moore had no relation whatsoever to the facts of Huttenback's case. Nothing Murray did in Huttenback's case could have affected the Moore case, and nothing in Moore could have affected Huttenback. There was no factual or legal nexus between the two cases, and the other connections Huttenback alleges between the University and Murray are premised only on suppositions. "[T]he evidence permits no more than mere speculation" regarding the existence of a conflict. Willis v. United States, 614 F.2d 1200, 1205 (9th Cir.1979). We affirm the district court's finding that no actual conflict existed.
 
 
 23
 We do not reach the alleged instances of ineffective assistance. Only after we find that a petitioner has suggested an actual conflict must we "examine the record to discern whether the attorney's behavior seems to have been influenced by the suggested [conflict]." Maiden v. Bunnell, 35 F.3d 477, 481 (9th Cir.1994) (citing Sanders, 21 F.3d at 1452).
 
 III
 
 24
 Huttenback's claim that Murray's failure to inform him of his representation of Dr. Golde violated his Sixth Amendment right to participate in and make his own defense depends upon the existence of an actual conflict. Because we affirm the district court's finding that no actual conflict existed, we find this argument without merit. We note that even if a conflict did exist, basing a Sixth Amendment violation solely upon the effect of the conflict on Huttenback's right to make his defense would constitute a new extension of that right, Faretta v. California, 422 U.S. 806, 819 (1975) (describing right to self-representation), and would conflict with the ban on applying new constitutional rules of criminal procedure in habeas proceedings. See Teague v. Lane, 489 U.S. 288, 310 (1989).
 
 IV
 
 25
 Huttenback also challenges the district court's denial of an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing if he has alleged facts which, if proven, would entitle him to relief, and he did not receive a full and fair evidentiary hearing in a state court. Swan v. Peterson, 6 F.3d 1373, 1384 (9th Cir.1993). Huttenback requested but did not receive an evidentiary hearing in state court on his claim of divided loyalties. We review the district court's decision to deny an evidentiary hearing for abuse of discretion. Id.
 
 
 26
 Huttenback alleged in his petition that the University paid Murray's fees. However, Huttenback apparently abandoned this contention before the district court after the State presented evidence that the University's insurer and not the University had paid some of Murray's fees. He does not press for the resolution of this factual issue on appeal, arguing instead that the fact that Murray sought fees from the University is sufficient to give rise to a conflict.
 
 
 27
 We disagree and find no abuse of discretion in the denial of an evidentiary hearing. The simultaneous representation of a University employee and the standard payment of fees by an insurer to an attorney for a party with conflicting interests do not give rise to a suggestion of a conflict.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because the district court adopted the magistrate's report and recommendation without comment, we refer to it hereafter to the decision of the district court