**PEOPLE OF the TERRITORY OF GUAM, Plaintiff–Appellee,**

v.

**Anthony Camacho IGNACIO, Defendant–Appellant.**

No. 92–10582.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 2, 1993.

Decided Nov. 18, 1993.

Joaquin C. Arriola, Jr., Arriola, Cowan & Bordallo, Agana, Guam, for defendant-appellant.

J. Andrew Artero–Boname, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before: D.W. NELSON and NORRIS, Circuit Judges, and TANNER, District Judge.*

D.W. NELSON, Circuit Judge:

Anthony Camacho Ignacio ("Ignacio") appeals from a ruling of the District Court of Guam, Appellate Division affirming his jury conviction for first degree criminal sexual conduct. The jury found that Ignacio had sexually molested a three-year-old girl, and the court sentenced him to seven years imprisonment. We have jurisdiction under 48 U.S.C. § 1424-3(c).

Ignacio makes three claims on appeal: (1) that the court's admission of certain hearsay statements violated the Confrontation Clause; (2) that the court erred in excluding evidence about a defense theory of third-party culpability; and (3) that the evidence was insufficient to support the conviction. We find that three of the four hearsay statements to which Ignacio objects were properly admitted. With respect to the fourth, the victim's statements to a social worker, we hold that they were not admissible under the medical diagnosis or treatment exception. In this case, however, the admission of such evidence was harmless beyond a reasonable doubt. None of the other claims has merit. Accordingly, we affirm the conviction.

## I. FACTUAL & PROCEDURAL BACKGROUND

On January 29, 1991, the child victim was left in the care of Melinda Ignacio, her mother's first cousin and the defendant's wife. Although the Ignacios are the victim's second cousins, she refers to Melinda Ignacio as "Auntie Lin" and Anthony Ignacio as "Uncle Ton". Melinda Ignacio left the victim in the care of the defendant for approximately one hour while she attended a meeting at her daughter's school. When she returned home, the victim approached her and said "Auntie Lin, Uncle Ton touched my pee-pee." She immediately checked the child's genital area. She described the child's vagina as red, swollen, and producing a yellow mucous. [RT Vol. II 55–58.] Melinda Ignacio confronted her husband; he denied the victim's accusations. She then gave the victim a bath. Melinda Ignacio never discussed these events with the victim's mother. [RT Vol. II 58–60.]

That same evening, while having her regularly scheduled bath, the victim would not let her sister Sheila wash her vaginal area, saying that it hurt a lot. Sheila examined the victim's vagina, which was swollen and hard to the touch. She reported this to the victim's mother. The victim's mother then called the Navy Hospital emergency room, explained the situation, and was given an appointment with a pediatrician at the first possible time, two days later.

Dr. McCaffrey, the hospital's head of pediatrics, examined the victim on January 31, 1991. He knew only that the patient had complained of genital pain, so he proceeded to examine her vaginal area. He testified that he found

a small tear that could be seen in the posterior fourchette which is the lower portion where the labia come down and connect; there was a tear, small tear, down in that area ... I could see it with the naked eye.... And looking down with the otoscope, it was confirmed; it was very clear; a tear just jumped right out. [Q: Were you able to determine how old the tear was?] ... If I had to guess how old it was, I would say maybe a day or two old. It was no older than that.

[RT Vol. II 148.] He examined the hymen and found it intact, but testified that "you can have an intact hymen and still have penetration." [RT Vol. II 165.]

Based upon these observations, the doctor suspected child sexual molestation, and he proceeded to investigate this possibility with the child and the mother. He asked the victim's mother if she had any concerns

---

* The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation.

about or knowledge of any sexual abuse and she said she did not. He then tried to elicit information from the victim.

> [I]t's a tough thing to do with a little girl, who especially is three, that age range is kind of tough. You don't want to intimidate them too much. But, just trying to talk to her a little bit and play with her a little bit and asking her if anyone could have hurt her down there and touched her down there and actually asked mom for her word for her genitalia, and mom, I believe, said it was pee-pee. And asked her if anyone could have touched her or hurt her and at first she kind of sat there.... And then, after questioning her at one point, very lowly, she started to whisper and I could, at some point, she got a little bit louder; I could hear what she was saying. What it sounded like she was saying was uncle Tome (phonetic) ...

[RT Vol. II 155.]

After the examination, Dr. McCaffrey referred the victim and her mother to a social worker, who interviewed them the same afternoon. Although the victim was non-communicative during her conversation with the social worker (the social worker eventually resorted to having the victim's mother ask his questions), she made one statement, to the effect that the defendant was the perpetrator.

Ignacio's first trial ended with a hung jury. Upon retrial, the jury found him guilty of first degree criminal sexual conduct. He appealed to the District Court of Guam, Appellate Division, which affirmed the conviction. He timely appealed to this court.

## II. *STANDARD OF REVIEW*

■ We review *de novo* decisions of the District Court of Guam, Appellate Division. *Guam v. Yang*, 850 F.2d 507, 509 (9th Cir. 1988) (en banc). Thus, this court reviews the decision of the trial court, the Superior Court of Guam, as if it had not been heard previously by an appellate court.

1. Under *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980), the trial court was required to find that the declarant was "unavailable" as a witness before it could admit hearsay statements. The Court's recent decision

■ We review *de novo* Ignacio's claim that the trial court's admission of certain hearsay evidence violated the Confrontation Clause. *United States v. George*, 960 F.2d 97, 99 (9th Cir.1992). We review for abuse of discretion a claim that the trial court improperly excluded evidence of third-party culpability. *United States v. Adrian*, 978 F.2d 486, 492 (9th Cir.1992). Although these questions involve interpretation of the Guam Code of Evidence, we note that the Guam Code is identical to the Federal Rules of Evidence, and thus we follow the federal courts' interpretation of the federal rules. *Guam v. Agualo*, 948 F.2d 1116, 1118 (9th Cir.1991) (citing *Guam v. Ojeda*, 758 F.2d 403, 406 (9th Cir.1985)).

■ With regard to Ignacio's claim that there was not sufficient evidence to support his conviction for first degree criminal sexual conduct, we must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Bishop*, 959 F.2d 820, 829 (9th Cir.1992).

## III. *ADMISSION OF HEARSAY STATEMENTS*

Ignacio claims that the trial court's admission of hearsay evidence relating to the child victim's disclosure of the act of the sexual assault and the identity of the perpetrator violated the Confrontation Clause. The evidence consisted of the victim's statements to a pediatrician, a social worker, her sister Sheila, and Melinda Ignacio. After determining that the child victim was unavailable as a witness,[1] the trial court admitted the testimony of the doctor and the social worker under the hearsay exception for statements made in the course of medical diagnosis or treatment (6 Guam Code Ann. § 803(4) and Fed.R.Evid. 803(4)). The court admitted Sheila's testimony under the present sense

in *White v. Illinois*, ––– U.S. –––, 112 S.Ct. 736, 741–42, 116 L.Ed.2d 848 (1992), which was decided after the trial in the case at bar, does away with the unavailability requirement.

impression exception (6 Guam Code Ann. 803(1) and Fed.R.Evid.Rule 803(1)). Melinda Ignacio's testimony was admitted under the excited utterance exception (6 Guam Code Ann. § 803(2) and Fed.R.Evid.Rule 803(2)).

Child sexual abuse cases raise unique issues regarding the admissibility of hearsay statements and the defendant's right to confront persons providing evidence against him. In such cases, the need for the victim's out-of-court statements about the crime is likely to be great. As it is unlikely that there will be witnesses other than the accused and the victim, the victim's out-of-court statements are often the only evidence of the crime. Judy Yun, Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Col.L.Rev. 1745, 1749–51 (1983).

At the same time, these distressing cases raise the spectre of fabricated or exaggerated charges, either because of pressure from adults in the child's life or from adult investigators. *See* Eileen A. Scallen, *Constitutional Dimensions of Hearsay Reform: Toward a Three–Dimensional Confrontation Clause*, 76 Minn.L.Rev. 623, 652 (1992). Thus, these cases pit the state's interest in admitting what may be the only evidence of a crime against the state's interest in ensuring that the defendant's rights (including the right to confront one's accusers) are given the utmost respect. As we consider the defendant's claim, we are mindful of this tension.

■ The Confrontation Clause limits the conditions under which hearsay evidence can be admitted, but it does not bar such evidence completely. *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Hearsay evidence which is sufficiently reliable, either because it falls within a "firmly rooted hearsay exception" or is supported by "particularized guarantees of trustworthiness," does not violate the Confrontation Clause. *Id.* at 816, 110 S.Ct. at 3147. *See also George*, 960 F.2d at 99.[2]

### A. Statements Admitted Under the Medical Exception

■ The trial court found that the child victim's statements to a pediatrician and to a social worker regarding the nature of the molestation and the identity of the perpetrator fell within the medical diagnosis or treatment exception to the rule against hearsay. Section 803(4) admits as an exception to the hearsay rule:

[s]tatements made *for purposes of medical diagnosis or treatment* and describing medical history, or past or present symptoms, pain, or sensations or the inception or general character of the cause or external source thereof *insofar as reasonably pertinent to diagnosis or treatment.*

6 Guam Code Ann. § 803(4) (emphasis added). *Cf.* Fed.R.Evid. 803(4). The medical treatment exception is a "firmly rooted" exception to the exclusion of hearsay evidence. *White*, —— U.S. at —— n. 8, 112 S.Ct. at 741, n. 8. The basis for this exception is the presumption of reliability of statements which flow from "the patient's strong motivation to be truthful." Fed.R.Evid. 803(4), Advisory Committee's Note. *See also McCormick On Evidence* § 292 (Cleary, 3d ed. 1984); 6 J. Wigmore, *Evidence in Trials at Common Law* § 1719 (Chadbourn, rev. ed. 1976). In *Wright*, the Supreme Court explained that "statements admitted under a 'firmly rooted' hearsay exception" satisfy the reliability requirements of the Confrontation Clause because they "are so trustworthy that adversarial testing would add little to their reliability." *Wright*, 497 U.S. at 821, 110 S.Ct. at 3149. Similarly, in *White*, the Supreme Court noted that "the evidentiary rationale for permitting hearsay testimony regarding spontaneous declarations and statements made in the course of receiving medical care is that such out-of-court declarations and statements are made in contexts that provide substantial guarantees of their trustworthiness." *White*, —— U.S. at ——, 112 S.Ct. at 742. The Court further explained that "it is [their trustworthiness] that has led us to conclude that 'firmly rooted' exceptions

---

**2.** Although *George* did not overrule expressly *United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988), its interpretation of the Supreme Court's holdings in *White* and *Wright* suggests that it did so implicitly. Rather than apply *Layton's* pre–*Wright* and pre–*White* seven-factor reliability test, as Ignacio urges us to do, we adopt the new standard as enunciated in *George*.

carry sufficient indicia of reliability to satisfy the reliability requirement posed by the Confrontation Clause." Id. n. 8 (citing *Wright*, 497 U.S. at 806–07, 110 S.Ct. at 3141–42.).

■ Thus, a child victim's statements about the identity of the perpetrator are admissible under the medical treatment exception *when they are made for the purposes of medical diagnosis and treatment. George*, 960 F.2d at 99. The rationale for the exception is that the patient can be expected to tell the truth about her injury because she will want to be diagnosed correctly and treated appropriately.

In reviewing the trial court's decision, we consider separately the admissibility of the statements to the doctor and the social worker.

■ As we acknowledged in *George*, hearsay evidence can be admitted under the medical treatment exception whether the statements were made for purpose of physical or non-physical treatment and diagnosis.

Sexual abuse involves more than physical injury; the *physician* must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser. Furthermore, depending upon the nature of the sexual abuse, the identity of the abuser may be pertinent to the diagnosis and treatment of sexually transmitted diseases.

*George*, 960 F.2d at 99 (citations omitted) (emphasis added).

■ The victim's statements to Dr. McCaffrey about how she got hurt and who hurt her, fall within the exception because they pertain to "the cause or external source" of the injury and because they are "pertinent to diagnosis or treatment." *George*, 960 F.2d at 99. Thus, admission of this hearsay evidence did not violate the Confrontation Clause. *Id.* at 100.

■ The record does not show that the statement to the social worker was for medical treatment. The testimony of Mr. Pereda, the social worker, establishes that he questioned the child to determine whether he needed to notify Child Protective Services of a case of suspected child abuse. [RT Vol. II 140–42]. Counsel for Guam acknowledged at oral argument that Mr. Pereda's questions about the identity of the abuser were aimed at ensuring the child's safety and were not aimed at treating or diagnosing the child's physical or psychological needs.[3] Therefore, admission of the child's statement to the social worker was an abuse of discretion because the record fails to support the trial court's finding that the statement was made in the course of medical treatment.[4]

Although the trial judge improperly admitted the child's statement to the social worker under a firmly rooted hearsay exception, the requirements of the Confrontation Clause may still be satisfied upon a showing that the statement bears the requisite "'indicia of reliability.'" *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) ("Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."); *Wright*, 497 U.S. at 816, 110 S.Ct. at 3147.

■ In *Wright*, the Supreme Court cautioned that "unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement." *Wright*, 497 U.S. at 821, 110 S.Ct. at 3150. The hearsay statement in this case does not satisfy *Wright*. The child's statement was not spontaneous, the record does not show that the statement was accompanied by an emotional

---

**3.** It should be emphasized that whether a statement is admissible under the medical treatment exception does not depend solely on the intent of the person asking the questions, but also on whether the respondent understands herself to be providing information for purposes of medical treatment.

**4.** We need not address at this time whether statements made to a social worker purportedly for the purpose of physical or psychological treatment would be admissible under the medical treatment exception.

display that would indicate that she was telling the truth and the record does not support a finding that the child used terminology unexpected of a child of similar age or that the child lacked motive to fabricate evidence. *See Id.*, at 821–22, 110 S.Ct. at 3150 (providing a nonexclusive list of factors to consider when determining the trustworthiness of hearsay statements admitted under a residual hearsay exception). The discussion in the child's presence between the social worker and the child's mother concerning the suspicion of sexual abuse arguably provided a basis for the child to report inaccurately the abuse and possibly the identity of the abuser in an attempt to please her mother. Thus the record before us does not provide an "affirmative reason" to believe that the hearsay statement was particularly trustworthy.

Although we hold that the court's admission of the victim's hearsay statement to the social worker was erroneous, its impact is subject to harmless error analysis. *United States v. Vargas*, 933 F.2d 701, 704–5 (9th Cir.1991). In this case, the only statement the victim made to the social worker concerned the identity of the perpetrator, information already properly in the record through the testimony of both the pediatrician and defendant's wife, Melinda Ignacio. Mrs. Ignacio's testimony about the child's identification of the defendant as the abuser was particularly powerful. She testified that the child was left in the Ignacio home alone with the defendant, that when she returned home the child told her that "Uncle Ton" touched her "pee-pee," and that she then examined the child and discovered that the child's vagina was red and contained a yellow mucous-like fluid. We conclude that the social worker's testimony was cumulative of other compelling testimony and was, therefore, harmless beyond a reasonable doubt.

### B. *Statements Admitted As Present Sense Impressions*

■ Ignacio claims error in the district court's admission of the victim's statements to her sister under the present sense impression exception. This exception allows for the admission of hearsay statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." 6 Guam Code Ann. § 803(1). While her older sister was giving her a regularly scheduled bath on the evening of the molestation, the victim would not allow her sister to wash her vaginal area, complaining that "her pee-pee hurt." Since the victim made the statements while she was experiencing the pain, they come within the present sense impression exception.

Neither the Supreme Court nor this court has ruled as to whether or not the present sense impression exception is a "firmly rooted" exception to the rule against hearsay. We need not reach this question, however, because we find that there were sufficient indicia of reliability, considering the totality of the circumstances surrounding the statement, as to the veracity of the statement. *See Wright*, 497 U.S. at 821–22, 110 S.Ct. at 3149–50. Rather than enunciate a rigid test for reliability, the Court stated that "the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.* at 822, 110 S.Ct. at 3150.

Here, the nearness in time of the statement to the molestation (later that day), the naturalness of the situation in which the victim made the statement (during a regular activity in which she was used to her sister washing her vaginal area), and the expression of severe pain (akin to the self-interest rationale behind the medical exception), all mitigate against the statement's fabrication. Thus, its admission did not violate the Confrontation Clause.

### C. *Statement Admitted as an Excited Utterance*

■ Ignacio also objects to the trial court's admission of the victim's statements to Melinda Ignacio under the excited utterance exception. Under this exception, "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" may be admitted. 6 Guam Code Ann. § 803(2). In evaluating whether or not the victim's statements to her

babysitter come within this exception, we consider the nature of the "startling event" and the time-frame within which the statements were made. Fed.R.Evid. 803(2), Advisory Committee's Note.

In this case, the molestation of the victim by an adult male family member was likely extremely traumatic and we can assume that the child still would have been "under the stress" of it when Melinda Ignacio returned. *United States v. Nick*, 604 F.2d 1199 (9th Cir.1979) (holding that a three-year-old victim's statements to his mother within hours of the act of molestation were admissible under the excited utterance exception, Fed. R.Evid. 803(2)). *Cf. Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir.1988) (finding that a four-year-old victim's statements to her mother about molestation which occurred the previous night should have been admitted under the excited utterance exception to hearsay). Since the excited utterance exception is firmly rooted, *White*, ── U.S. at ──, 112 S.Ct. at 742–743, the Confrontation Clause was not violated by the admission of this evidence.

### IV. *EXCLUSION OF SUICIDE EVIDENCE*

■ Ignacio claims error in the trial court's exclusion of evidence about the suicide of John Santos, the victim's mother's boyfriend. There is no question that the defendant has the right to introduce evidence of third-party culpability. *Perry v. Rushen*, 713 F.2d 1447, 1449 (9th Cir.1983), *cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984); *see also Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). The defendant's right to present evidence which may exonerate him, however, is not absolute and may have to "bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).

■ In *Perry*, this court articulated the standard for balancing the defendant's "undeniably strong" interest in introducing such evidence with the state's "compelling" interest in reliable and efficient trials. 713 F.2d at 1451–1452. Evidence of third-party culpability is not admissible "if it simply affords a possible ground of suspicion against such person; rather, *it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense*." *Id.* at 1449 (quoting *People v. Green*, 27 Cal.3d 1, 22, 164 Cal.Rptr. 1, 609 P.2d 468 (1980)) (emphasis added). The *Perry* court upheld the trial court's exclusion of the third-party culpability evidence because "[w]hile Perry's evidence [was] not actually irrelevant, it [was] sufficiently collateral and lacking in probity on the issue of identity ..." *Id.*, at 1455.

In this case, the trial court found that Ignacio had not presented "substantial evidence" connecting Santos to the crime charged. The defense attempted to link Santos to the sexual assault by asserting these facts: he committed suicide three months after the molestation occurred; he was the victim's mother's boyfriend and occasionally spent the night at the household; and he urged the victim's mother to pursue the incident with the police.[5] We find that the trial court did not abuse its discretion in finding that these items together did not constitute "substantial evidence."

### V. *SUFFICIENCY OF THE EVIDENCE*

■ Ignacio's final argument is that the evidence was insufficient to support a conviction. The jury convicted Ignacio of first degree criminal sexual conduct.

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with the victim and if any of the following circumstances exists: (1) the victim is under fourteen (14) years of age....

9 Guam Code Ann. § 25.15. "Sexual penetration" is further defined as "sexual intercourse ... or any other intrusion, however slight, of any part of a person's body ... but

---

5. Initially, Ignacio claimed that the pre-trial record contained evidence that the child victim had called Santos by the name "Uncle Jay" and that she had referred to "Uncle Jay" touching her.

The trial court found that no such evidence existed and chided defense counsel for contending otherwise. [CR 19, n. 4.]

emission of semen is not required." 9 Guam Code Ann. § 25.10(a)(9). There was sufficient evidence for a rational jury to find the elements of this crime beyond a reasonable doubt.

In particular, the testimony of the pediatrician and Melinda Ignacio go directly to the element of sexual penetration of the victim and the identification of Ignacio as the perpetrator. Dr. McCaffrey testified under direct and cross-examination that the victim identified Ignacio as the molester. He also said, based on his examination of the victim's physical condition two days after she spent the day at the Ignacio home, that her injuries were consistent with sexual penetration and were not more than two days old. Melinda Ignacio's testimony confirmed her written statement to the police in which she described the victim's almost immediate identification of the assault and the perpetrator upon her return home. Thus, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Ignacio had committed the crime.

## CONCLUSION

Ignacio's claims that the district court erroneously excluded evidence of third-party liability and that the evidence was insufficient are without merit. His claim that the admission of several out-of-court statements by the child victim under exceptions to the hearsay rule violated the Confrontation Clause also is unpersuasive. We hold that the statement to the social worker was improperly admitted under the medical treatment exception to the hearsay rule because the statement was not made for the purpose of medical treatment or diagnosis. We affirm Ignacio's conviction because the error was harmless beyond a reasonable doubt.

AFFIRMED.