**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARTIN NEZ,

Defendant - Appellant.

No. 14-10104

D.C. No. 3:12-cr-08109-GMS-1

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted June 17, 2016
San Francisco, California

Before: SCHROEDER, TASHIMA, and OWENS, Circuit Judges.

Martin Nez appeals from his jury conviction and sentence for aggravated

sexual abuse under 18 U.S.C. §§ 1153 and 2241(a) and abusive sexual contact

under 18 U.S.C. §§ 1153, 2244(a)(1), and 2246(3).  We affirm Nez's conviction,

but remand to the district court for the limited purpose of correcting several errors

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

related to Nez's conditions of supervised release. Because the parties are familiar with the facts of this case, we do not repeat them here.

1.    The government concedes that the district court erred in preventing Nez from testifying about certain statements that he alleged D.B. made to him during their sexual encounter. The statements were either admissible under Federal Rule of Evidence 803(3) or not hearsay, and were not otherwise admitted into the record. This error was harmless under either the constitutional or non-constitutional standard, however, as the excluded statements had very limited probative value in light of Nez's other testimony recounting that D.B. initiated much of their encounter and otherwise conveyed her willingness to engage in it.

2.    The district court did not clearly err in finding that D.B.'s statements to Nurse Clinton were made for the purpose of medical diagnosis and treatment, nor did it abuse its discretion in admitting Clinton's testimony relating D.B.'s statements. *See* Fed. R. Evid. 803(4). While statements of fault are not usually admissible under Rule 803(4), this court has recognized that "[s]exual abuse involves more than physical injury; the physician must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser." *United States v. George*, 960 F.2d 97, 99 (9th Cir. 1992). As such, "a child victim's statements about the identity of the

2

perpetrator are admissible under the medical treatment exception *when they are made for the purposes of medical diagnosis and treatment*." *People of Guam v. Ignacio*, 10 F.3d 608, 613 (9th Cir. 1993) (citing *George*, 960 F.2d at 99). While the medical professional's perspective may inform our analysis, "[t]he *declarant's self-interest in proper diagnosis provides the indicia of reliability*." *United States v. Yazzie*, 59 F.3d 807, 813 (9th Cir. 1995); *see also Ignacio*, 10 F.3d at 613 n.3. The record reflects that D.B. understood that her examination with Nurse Clinton was for the purpose of medical treatment and not merely to collect evidence, notwithstanding the fact that she had previously undergone an exam in the emergency room. Similarly, it is not dispositive that she was referred to Nurse Clinton by an FBI agent. Additionally, Nurse Clinton intended to provide medical treatment during the examination, and D.B.'s description of the sexual encounter was necessary to provide effective treatment.

3. Even assuming that Moncher's expert testimony was admitted in error, any error was harmless in light of its limited scope, Moncher's testimony on cross-examination, and Leonard's expert testimony.

4. Any errors in excluding the statements that D.B. made to Nez and admitting Moncher's expert testimony were also cumulatively harmless. *See United States v. Cazares*, 788 F.3d 956, 990-91 (9th Cir. 2015). The erroneously excluded

testimony had limited probative value, and the erroneously admitted testimony was limited in scope and effectively undermined during trial.

**5.** The government concedes that the district court erroneously imposed two conditions of supervised release. We remand for the district court to correct these errors.

First, the "special" condition of supervised release relating to major purchases, financial obligations, and financial contracts may only be imposed under certain circumstances not present here. *See* U.S.S.G. § 5D1.3(d)(3); *see also United States v. Garcia*, 522 F.3d 855, 861-62 (9th Cir. 2008). It should be stricken on remand.

Second, there is an error in the written judgment. At the oral pronouncement of the sentence, the district court imposed a condition requiring Nez to submit to polygraph examinations, but the written judgment instead references plethysmograph testing. Plethysmograph testing was neither recommended nor imposed during sentencing. The error in the written judgment should be corrected on remand to conform to the terms of the oral pronouncement during sentencing.

We **AFFIRM** Nez's conviction and **REMAND** for the limited purpose of correcting errors in the conditions of supervised release.

4

*United States v. Nez*, 14-10104

TASHIMA, Circuit Judge, dissenting:

There was only one contested issue before the jury in this case: consent.[1]

D.B. testified that Nez raped her, while Nez maintained that D.B., who was legally

competent to give consent, voluntarily participated in their sexual encounter. The

district court committed three discrete errors: (1) excluding D.B.'s statements to

Nez on hearsay grounds; (2) admitting Nurse Clinton's testimony when no hearsay

exception applied; and (3) admitting Carli Moncher's expert opinion testimony

without conducting the gatekeeping analysis required by *Daubert*[2]. Because these

errors cumulatively deprived Nez of his due process right to a fair trial, I

respectfully dissent from the majority's affirmance of Nez's convictions.

I agree with the majority's conclusion that the district court erred by

prohibiting Nez from testifying about the statements D.B. made to him. However,

I disagree that the district court properly admitted Clinton's repetition of D.B.'s

accusations under Federal Rule of Evidence 803(4). "The basis for this [hearsay]

---

[1]     Nez was tried for and convicted of aggravated sexual abuse under 18
U.S.C. § 2241(a), and abusive sexual contact under 18 U.S.C. § 2244(a)(1). Both
of these crimes require the use of force, fear, or the threat of force. It is this
element that Nez was contesting when he claimed that the sexual intercourse
between him and D.B. was consensual.

[2]     *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

1

exception is the presumption of reliability of statements which flow from 'the *patient's* strong motivation to be truthful'" to secure proper diagnosis and treatment. *Guam v. Ignacio*, 10 F.3d 608, 612 (9th Cir. 1993) (emphasis added) (quoting Fed. R. Evid. 803(4) Advisory Committee's Note). The record does not support the majority's position that D.B. made her statements to Clinton for medical treatment. To the contrary, D.B. met with Clinton at the Flagstaff hospital only because "she was told to be there" by an FBI agent. When asked why she went to Flagstaff, D.B. testified that she went "[f]or an interview," which she did not wish to participate in. When D.B. arrived at Flagstaff, she first met with forensic interviewer Carli Moncher. Moreover, the day before D.B. met with Clinton, she had undergone a full physical examination, lasting several hours, at a different medical center. Under these facts, it is unlikely that D.B. was motivated by a desire "to be diagnosed correctly and treated appropriately" when she spoke with Clinton. *Id.* at 613. Accordingly, I would hold that the admission of her statements was an abuse of discretion.

The majority assumes, without deciding, that the district court erred in admitting Moncher's expert testimony. I would hold that this also was error. The district court failed to make *any* "kind of reliability determination to fulfill its gatekeeping function" before admitting Moncher's expert testimony. *Mukhtar v.*

2

*Cal. State Univ.*, 299 F.3d 1053, 1066 (9th Cir. 2002), *overruled in part on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc). Nor does the record provide us with sufficient information to determine independently whether Moncher's expert opinion was reliable. *See Estate of Barabin*, 740 F.3d at 467.

The cumulative effect of these three errors was to deprive Nez of his due process right to a fair trial. Even where "no single trial error . . . is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). A conviction violates due process where "the combined effect of multiple errors rendered a criminal defense 'far less persuasive' and had a 'substantial and injurious effect or influence' on the jury's verdict[.]" *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007) (citation omitted). *See also Ayala v. Chappell*, 2016 WL 3913446, at *26 (9th Cir. 2016) ("We have previously recognized that although individual errors may not rise to the level of a constitutional violation, a collection of errors might violate a defendant's constitutional rights." (alterations, internal quotation marks and citations omitted).

Because the sole issue before the jury was consent, a common "thread r[an] through the trial errors in this case": the improperly excluded evidence supported

Nez's defense, and the erroneously admitted evidence bolstered the government's case. *See Parle*, 505 F.3d at 930. The exclusion of D.B.'s statement – "Come on, Martin. Kiss me" – precluded Nez from fully presenting his defense that D.B. initiated their sexual encounter. *See id.* at 932–34 (holding that reversal of a murder conviction was warranted where the errors "went to the heart of the defense's case and the *only* issue before the jury"). This verbal imperative from D.B., if believed, would have been highly probative of consent. Instead, Nez was permitted to testify only about his interpretation of D.B.'s physical actions.

Moreover, permitting the jury to hear Clinton's detailed recitation of D.B.'s story a second time, as well as a description of her demeanor, bolstered D.B.'s credibility. Because Nez and D.B. were the only two direct witnesses, their respective credibility was paramount. D.B.'s description of her version of the events, as repeated by Clinton, was strong corroboration of D.B.'s testimony, bolstering her credibility. Clinton's testimony also reinforced D.B.'s account by exposing the jury to D.B.'s side of the story twice.

Finally, Moncher's expert testimony impermissibly allowed the jury to treat D.B.'s cutting episode as objective evidence supporting the government's case. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. Here, the prejudicial effect

4

of Moncher's testimony was particularly significant, given the lack of any other corroborating evidence supporting the prosecution's case. Moncher's unsubstantiated testimony as a purported expert that self-cutting by a child victim may indicate nonconsensual sex created the misleading impression that there was more reliable evidence supporting the government's case than there actually was.

"[W]here the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." *Frederick*, 78 F.3d at 1381. Here, the evidence against Nez was "not overwhelming and . . . the case was a close one." *See id.* The heart of the prosecution's case was D.B.'s testimony, which contained several unresolved inconsistencies. That testimony was impermissibly bolstered and emphasized, making it appear more credible than it otherwise would have been. At the same time, the district court prevented Nez from presenting a complete version of his defense, including the significant detail of what D.B. said to him to initiate their encounter, in a case where the sole question before the jury was whose word to believe. In sum, these errors, in combination, rendered Nez's defense "'far less persuasive than it might have been' and therefore had a 'substantial and injurious effect or influence on the jury's verdict,'" violating Nez's due process rights. *Parle*, 505 F.3d at 928 (citations omitted).

For the foregoing reasons, I would reverse the convictions and remand for a

5

new trial.  I therefore respectfully dissent.