**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ANGELICA URIAS ESPINOZA,
*Defendant-Appellant.*

No. 16-50033

D.C. No.
3:15-cr-01330-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted March 10, 2017
Pasadena, California

Filed January 22, 2018

Before: Richard A. Paez, Marsha S. Berzon,
and Morgan Christen, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Criminal Law

The panel reversed a conviction for importation of methamphetamine and remanded for a new trial in a case in which the district court excluded evidence of third-party culpability.

The panel held that the district court necessarily abused its discretion by applying an incorrect legal standard when it excluded evidence of third-party culpability for failing to meet the "substantial evidence" threshold discussed in *Perry v. Rushen*, 713 F.2d 1447 (9th Cir. 1983), and *Territory of Guam v. Ignacio*, 10 F.3d 608 (1983). The panel explained that nothing in either *Perry* or *Ignacio* purports to modify this court's standard for the admissibility of third-party culpability evidence under the Federal Rules of Evidence—"fundamental standards of relevancy."

Applying that standard, the panel held that the excluded evidence is undoubtedly relevant, and that a neighbor's conviction documents were improperly excluded under Fed. R. Evid. 404(b). The panel concluded that the erroneous exclusion of evidence was not harmless.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael Marks (argued), Federal Public Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

Colin M. McDonald (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section; Laura E. Duffy, United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

PAEZ, Circuit Judge:

Angelica Urias Espinoza appeals her conviction for importation of methamphetamine in violation of 21 U.S.C. §§ 952 and 960. We consider whether the district court abused its discretion in excluding evidence of third-party culpability.[1] As the district court applied the wrong legal standard in excluding the evidence of third-party culpability, it necessarily abused its discretion. Because the error was not harmless, we reverse Urias Espinoza's conviction and remand for a new trial.[2]

---

[1] Urias Espinoza also argues (1) that the exclusion of the evidence violated her constitutional right to present a defense, and (2) that in the alternative, she was improperly denied a minor-role adjustment at sentencing under United States Sentencing Guidelines § 3B1.2. As we reverse and remand for a new trial based on the district court's error under the Federal Rules of Evidence, we do not address her constitutional or sentencing arguments.

[2] We have jurisdiction under 28 U.S.C. § 1291.

## I.

On April 22, 2015, a Customs and Border Protection (CBP) agent stopped Urias Espinoza at the United States-Mexico border as she attempted to legally enter the United States through the Otay Mesa Port of Entry in California. As a Mexican national, Urias Espinoza had acquired a border crossing card that permitted her to legally enter the United States. In 2014, Urias Espinoza opened a business importing clothing from the United States to sell in Mexico; as a result, she crossed the border often to purchase clothes.

At the border entry point, the CBP agent asked Urias Espinoza for identification and whether she had anything to declare. She provided her border crossing card and stated that she was not bringing anything into the United States. The border agent suspected otherwise, and after some initial questioning, decided to conduct a search of her vehicle with assistance from several other agents. The search revealed that the car's rear seats had been hollowed out and stuffed with approximately twelve kilograms of methamphetamine.

The government charged Urias Espinoza with importing methamphetamine in violation of 21 U.S.C. §§ 952 and 960. At trial, the government called two CBP agents to testify about the discovery of methamphetamine in Urias Espinoza's car. Agent Tan testified that he noticed a bulge in the back seat of the car, poked around, and used a density reading machine, which recorded a high reading. Agent Tan further testified that he subsequently discovered cellophane packages underneath the upholstery of the back seats, and that Urias Espinoza did not react when he examined the seat and discovered the drugs. Agent Tan then handcuffed Urias Espinoza and called for backup. Agent Wallis testified next,

detailing how he retrieved both the drugs and a cell phone from Urias Espinoza's car.

Finally, Agent Perea from the Department of Homeland Security testified. He explained that Urias Espinoza had crossed the border fourteen times between February 27, 2015 and April 22, 2015. He also relayed a string of WhatsApp messages found on Urias Espinoza's cell phone that were date-stamped from the week before her arrest. The messages revealed a conversation that discussed delivery of a "product," as well as Urias Espinoza's plan to apply for a CBP pass that would have allowed her to gain expedited clearance when she entered the United States. Agent Perea confirmed that Urias Espinoza operated a clothing store in Mexico and that several receipts from Los Angeles found in her car matched the dates that Urias Espinoza previously had crossed the border.

After the prosecution's case in chief, Urias Espinoza presented her defense: that she did not know the drugs were in the vehicle she drove across the border because her next-door neighbor in Mexico had packed her car with methamphetamine without her knowledge and used her as a "blind mule" to smuggle the drugs into the United States. As part of her presentation, Urias Espinoza sought to present evidence from which the jury could conclude that her next-door neighbor knew she frequently traveled to the United States; knew that her car was parked on the street; knew how to obtain methamphetamine; was unable to drive across the border himself because of a prior deportation; set up Urias Espinoza as a "blind mule" to transport the methamphetamine into the United States; and then fled his home after he discovered that Urias Espinoza had been arrested.

The evidence Urias Espinoza sought to introduce in support of her defense was: (1) a screen shot of a Facebook page with her neighbor's photo and a statement that "he's been a drug dealer on the streets of L.A.," (2) the neighbor's prior conviction for possession with intent to distribute marijuana in Los Angeles, (3) the neighbor's prior conviction for importation of methamphetamine, (4) the neighbor's prior deportation, and (5) photographs of the neighbor. The district court excluded the evidence on the ground that the defense's theory of what happened was too speculative.

Although the district court excluded the bulk of Urias Espinoza's evidence, she was able to introduce some information through the testimony of four witnesses. The witnesses' testimony revealed that: (1) it was well known that Urias Espinoza traveled to the United States to buy clothes, (2) Urias Espinoza's house and her neighbor's house were in close proximity to each other, (3) Urias Espinoza parked her car on the street, and (4) shortly after Urias Espinoza's arrest, the neighbor's house was found vacant and in disarray. Urias Espinoza argued, however, that without the excluded evidence, the limited evidence that the district court did admit was insufficient to persuade the jury that her neighbor—who had the motive, knowledge, and opportunity to do so—set her up as a "blind mule" to transport methamphetamine into the United States on his behalf.

After a three-day trial, a jury found Urias Espinoza guilty of importing methamphetamine and the district court sentenced her to a term of imprisonment of ninety months followed by five years of supervised release. This timely appeal followed.

## II.

We review the district court's exclusion of evidence for abuse of discretion. *United States v. Evans*, 728 F.3d 953, 959 (9th Cir. 2013). First, we "determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the trial court identified an incorrect legal rule, "we must conclude it abused its discretion." *Id.* If the trial court identified the correct legal rule, then we must "determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks and citation omitted).

We conclude that the district court necessarily abused its discretion by applying an incorrect legal standard to determine whether third-party culpability evidence should be admitted.

## III.

This case centers on the threshold requirement for the admissibility of third-party culpability evidence under the Federal Rules of Evidence. In *United States v. Armstrong*, 621 F.2d 951 (9th Cir. 1980), we set forth the standard for the admissibility of such evidence, holding that under the Federal Rules of Evidence, "[f]undamental standards of relevancy, subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case, require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." *Id.* at 953. In other words, *Armstrong* dictates that

all evidence of third-party culpability that is relevant is admissible, unless barred by another evidentiary rule.[3]  We consistently applied this standard in a string of cases following *Armstrong*.  *See, e.g.*, *United States v. Wells*, No. 14-30146, 2018 WL 377837, at *28 (9th Cir. Jan 11, 2018), *amending* 877 F.3d 1099, 1136 (9th Cir. 2017); *United States v. Stever*, 603 F.3d 747, 756 (9th Cir. 2010); *United States v. Vallejo*, 237 F.3d 1008, 1023 (9th Cir. 2001); *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996).

Despite this clear line of authority stemming from *Armstrong*, the district court excluded Urias Espinoza's evidence of third-party culpability by relying on two cases it believed enunciated a different rule for the admissibility of third-party culpability evidence: *Perry v. Rushen*, 713 F.2d 1447, 1449 (9th Cir. 1983), and *Territory of Guam v. Ignacio*, 10 F.3d 608, 615 (9th Cir. 1993).  According to the district court, these cases stand for the proposition that "[e]vidence of third-party culpability is not admissible 'if it simply affords a possible ground of suspicion against such person; rather, it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense.'"  *Ignacio*, 10 F.3d at 615 (citing *Perry*, 713 F.2d at 1449).  The district court was mistaken.  These cases do not enunciate our rule for the admission of third-party culpability

---

[3] Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without further evidence; and (b) the fact is of consequence in determining the action."  Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: [] the United States Constitution; [] a federal statute; [] these rules; or [] other rules prescribed by the Supreme Court.  Irrelevant evidence is not admissible."

evidence, or establish a higher standard than that set forth in *Armstrong*.

We begin with a brief discussion of *Perry* and *Ignacio* to explain why the district court erred in relying on those cases. We then turn to whether the excluded evidence satisfies *Armstrong*'s standard of relevance, and conclude that it does. Finally, we hold that the erroneous exclusion of evidence was not harmless and therefore reverse the conviction and remand for a new trial.

## A.

In *Perry*, we reviewed the denial of Cornelius Perry's petition for a writ of habeas corpus seeking relief from his state conviction for aggravated assault. 713 F.2d at 1448. At his state court trial, Perry sought to present the testimony of a witness who was prepared to testify that another man may have committed the assault and that Perry had been misidentified as the assailant. *Id.* at 1449. The trial court excluded the evidence under California Evidence Code section 352 ("Section 352"), which permits a court, in its discretion, to exclude relevant evidence, provided the court makes certain findings.[4] *Id.* "[W]hen evidence is advanced that a third party may have committed the crime," California courts have interpreted Section 352 to prohibit the admission of such evidence "if it simply affords a possible ground of suspicion against [another] person; rather it must be coupled

---

[4] California Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

with substantial evidence tending to directly connect that person with the actual commission of the offense." *Id.* (quoting *People v. Green*, 609 P.2d 468, 480 (Cal. 1980)).

Perry argued "that the application of California evidence law violated his [S]ixth and [F]ourteenth [A]mendment rights." *Id.* at 1449–50. As a result, our task in *Perry* was to determine whether the trial court's exclusion of Perry's proffered third-party culpability evidence, under *California's* Section 352, violated his *constitutional* rights. In doing so, we adopted a balancing test that weighed Perry's right to present evidence against the State's interest in "reliable and efficient trials." *Id.* at 1451. Ultimately, we concluded that Perry's constitutional rights were not violated by the exclusion of the third-party culpability evidence under California's evidence code, and we affirmed the district court's denial of habeas relief. *Id.* at 1455.

Nothing in *Perry* purported to import California's evidentiary standard—which conditions admissibility on a showing of "substantial evidence" connecting the third-party to the crime—into the Federal Rules of Evidence. In fact, in *Perry* we acknowledged that *Armstrong* laid out the proper standard for the admissibility of third-party culpability evidence under the Federal Rules of Evidence: "[f]undamental standards of relevancy." *Id.* at 1451 (internal quotation marks omitted). In asserting his federal constitutional claim, Perry attempted to rely on our decision in *Armstrong*, but as we explained in *Perry*, *Armstrong* provided no support for Perry's constitutional argument because "[a]lthough [*Armstrong*] cit[ed] constitutional cases, [in *Armstrong* we] reviewed an application of the Federal Rules of Evidence by the federal district court . . . [and] [n]othing in *Armstrong* supports a belief that the Federal

Rules of Evidence are constitutionally required, or that the Constitution requires admission of all relevant evidence." *Id.* In *Perry*, therefore, we made clear that *Armstrong*'s "fundamental standards of relevancy" applies to the admission of third-party culpability evidence under the Federal Rules of Evidence; there is no requirement of "substantial evidence" linking the third-party with the actual commission of the offense. *See id.*

A decade later, in *Ignacio*, we relied on *Perry* to uphold the exclusion of third-party culpability evidence. 10 F.3d at 615. *Ignacio* involved a challenge by Anthony Camacho Ignacio to his jury conviction in the Superior Court of Guam for first degree sexual conduct. *Id.* at 611. Among other claims, Ignacio challenged his conviction on the basis that the trial court had abused its discretion in "excluding evidence about a defense theory of third-party culpability." *Id.* at 610. We noted that Ignacio's claim "involve[d] interpretation of the Guam Code of Evidence, . . . [which] is identical to the Federal Rules of Evidence." *Id.* at 611. In affirming the district court's exclusion of the evidence, we held that the trial court "did not abuse its discretion" in finding that "Ignacio had not presented 'substantial evidence' connecting the [third party] to the crime charged." *Id.* at 615.

The government argues that *Ignacio* applied *Perry*'s discussion of "substantial evidence" to federal cases, essentially adopting California's threshold for the admissibility of third-party culpability into the Federal Rules of Evidence. We disagree. We acknowledge that *Ignacio*'s analysis is less than clear. However, as the three judge panel in *Ignacio* was not free to ignore *Armstrong* and change our circuit's law regarding the threshold admissibility requirement for third-party culpability evidence, we decline

to interpret the opinion as establishing a new rule regarding the admissibility of such evidence.

At first blush, it would appear that Ignacio's challenge to the trial court's exclusion of third-party culpability evidence was brought under the Guam Code of Evidence, which is identical in its language to the Federal Rules of Evidence. *Id.* at 611. In fact, as we noted earlier, at the outset of *Ignacio*, we stated that we were reviewing Ignacio's claims under an abuse of discretion standard, the standard under which we review evidentiary objections. *Id.* Subsequently, however, our substantive discussion of Ignacio's claim was grounded in constitutional case law that balanced the "defendant's right to present evidence which may exonerate him" against "other legitimate interests in the criminal trial process." *Id.* at 615. We cited to *Chambers v. Mississippi*, 410 U.S. 284 (1973) for such a test.

In *Chambers*, the Supreme Court held that, as a result of several evidentiary rulings by the trial court, the defendant's trial "was [not] conducted in accord with principles of due process under the Fourteenth Amendment." *Id.* at 285. After citing to *Chambers*, *Ignacio* observed that we previously "articulated the standard for balancing the defendant's 'undeniably strong' interest in introducing [evidence of third-party culpability] with the state's 'compelling' interest in reliable and efficient trials." *Ignacio*, 10 F.3d at 615 (citing *Perry*, 713 F.2d at 1451–52). In other words, *Ignacio*'s discussion is framed around a constitutional balancing analysis, suggesting that we either construed Ignacio's argument as raising a constitutional claim under the Sixth Amendment right to present a defense, or we held Ignacio to a higher standard under the Guam Rules of Evidence by applying a constitutional framework to his non-constitutional

claim. Although we acknowledge that our analysis in *Ignacio* is less than clear, what is clear is that nothing in *Ignacio* purports to announce a new rule for the admissibility of third-party culpability evidence under the Federal Rules of Evidence.

For the foregoing reasons, the district court erred in excluding Urias Espinoza's evidence of third party culpability because it failed to meet the "substantial evidence" threshold discussed in both *Perry* and *Ignacio*. Nothing in either *Perry* or *Ignacio* purports to modify our standard for the admissibility of third-party culpability evidence under the Federal Rules of Evidence—"fundamental standards of relevancy." *Armstrong*, 621 F.2d at 953. We next apply that standard to the facts of the appeal before us. *See id.*

Taken together, the excluded evidence in this case is undoubtedly relevant, as it makes it more likely that the neighbor used Urias Espinoza as a "blind mule," which would negate the mens rea element of the charged offense—Urias Espinoza's knowledge. *See* Fed. R. Evid. 401. The district court instructed the jury that "the government is required to prove . . . beyond a reasonable doubt . . . . that the defendant knowingly brought methamphetamine into the United States" and that "[a]n act is done knowingly if the defendant is aware of the act and doesn't act through ignorance or mistake or accident." As a result, not only was the government required to establish Urias Espinoza's knowledge to obtain a conviction, but such knowledge was a contested element, as Urias Espinoza did not admit to hiding the drugs in her car. Moreover, the government did not present any testimony from a witness who had seen Urias Espinoza load the drugs into her car. Given the circumstances, evidence tending to

show that someone else may have packed Urias Espinoza's car without her knowledge is relevant.

## B.

We turn to an examination of the individually excluded pieces of evidence, and conclude that each one is relevant. We further conclude that the neighbor's conviction documents were improperly excluded under Federal Rule of Evidence 404(b).

## 1.

### a.

First, we consider the relevance of the neighbor's prior convictions. Urias Espinoza sought to introduce documentary evidence of the neighbor's prior convictions for importing methamphetamine and possession with intent to distribute marijuana.   The defense argued that these convictions demonstrated Urias Espinoza's neighbor had the "ability and motive" to find and transport methamphetamine.  We agree. Specifically, the conviction for the importation of methamphetamine helps establish the neighbor's requisite knowledge of how to obtain and transport methamphetamine in distribution-level quantities, thus making it more likely that he packed Urias Espinoza's car with the drugs.  Similarly, the conviction for possession with intent to distribute marijuana in Los Angeles demonstrates a possible connection to drug dealers in the United States who could sell the imported methamphetamine found in Urias Espinoza's car.    In combination, these convictions make it more likely that the neighbor had the knowledge and ability to set up Urias Espinoza as a "blind mule."  Moreover, the introduction of

these convictions would have been particularly salient when contrasted with the evidence presented that Urias Espinoza was a law-abiding citizen, thus lacking the requisite knowledge and connections to import large quantities of narcotics into the United States.

The government argues that because the convictions are more than a decade old, they are not probative. We disagree. For the importation conviction, the conduct was exactly the same as here—importation of methamphetamine through the Mexican border—and is therefore probative. *See, e.g.*, *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (permitting thirteen-year-old prior bad act evidence because it was "sufficiently similar to the charged conduct to render it probative despite the passage of time"); *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989) ("Given the similarity of the offenses [thirteen years apart], the prior act was not so remote as to require exclusion."). Although the conviction for possession with intent to distribute marijuana is not identical to the charged offense, it is nonetheless relevant and minimally probative. The fact that this conviction involved the neighbor's handling of a distribution-quantity of drugs, particularly in combination with the conviction for importation of methamphetamine, makes it more likely that the neighbor set up Urias Espinoza as a "blind mule." Moreover, the conviction's marginal probative value is not outweighed by any risk of prejudice to the government. *Cf. Duran v. City of Maywood*, 221 F.3d 1127, 1133 (9th Cir. 2000) (affirming the district court's exclusion of evidence because its marginally probative value was substantially outweighed by the danger of unfair prejudice).

**b.**

Having concluded that the conviction documents were relevant, we further hold that the district court erred in excluding them under Federal Rule of Evidence 404(b) as improper propensity evidence. Rule 404(b) bars admission of "[e]vidence of other crimes, wrongs, or acts where that evidence prove[s] *only* criminal disposition." *United States v. Cruz-Garcia*, 344 F.3d 951, 954 (9th Cir. 2003) (internal quotation marks and citation omitted). As we have explained, however, Rule 404(b) is "one of inclusion, and if evidence of prior crimes bears on other relevant issues, 404(b) will not exclude it." *Id.* (internal quotation marks omitted). Under Rule 404(b), evidence of other crimes may be admissible to prove, *inter alia*, knowledge, motive, and opportunity. Fed. R. Evid. 404(b)(2); *see also Cruz-Garcia*, 344 F.3d at 955 (Rule 404(b)(2)'s list of permissible purposes "is illustrative, not exhaustive").

In *Cruz-Garcia*, the prosecution's case largely rested on the theory that the defendant's alleged co-conspirator was insufficiently intelligent to have trafficked drugs on his own, and thus must have received assistance from the defendant. *Id.* at 953. To rebut this theory, the defendant sought to introduce evidence of the circumstances underlying the supposed co-conspirator's prior conviction for drug trafficking, which the district court excluded under Rule 404(b). *Id.* We reversed, holding that the evidence was relevant to a matter other than the alleged co-conspirator's propensity to commit crime: it could establish that the co-perpetrator had the sophistication and intelligence to traffic drugs on his own without the help of the defendant, thus casting doubt on the defendant's knowledge that the alleged co-perpetrator was hiding drugs and on his intent to conspire with the alleged co-perpetrator to deal drugs. *Id.* at 954–55.

Here, the conviction documents Urias-Espinoza sought to introduce were relevant to establishing the neighbor's knowledge and ability—not merely his propensity to commit crime. As discussed, the conviction documents could establish the neighbor's knowledge of how to find and transport large quantities of methamphetamine. Similarly, the conviction for possession with intent to distribute marijuana in Los Angeles demonstrates a possible connection to drug dealers in the United States, and thus makes it more likely that the neighbor had the ability to sell the imported methamphetamine in Urias Espinoza's car. As in *Cruz-Garcia*, this evidence was relevant to matters other than merely a third party's propensity to commit crime, and so should not have been excluded under Rule 404(b).

We caution, however, that our ruling that the conviction documents were admissible here is not transferable to a situation in which the government seeks to introduce similar evidence with respect to a defendant's prior crimes under Rule 404(b). *See United States v. Rocha*, 553 F.2d 615, 616 (9th Cir. 1977). This is because "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword." *United States v. Wright*, 625 F.3d 583, 608 (9th Cir. 2010) (internal quotation and citation omitted). Although Rule 404(b) does apply to witnesses and third parties,

> courts should indulge the accused when the defendant seeks to offer prior crimes evidence of a third person for an issue pertinent to the defense other than propensity. This is because 404(b) is often thought to protect a defendant from being tried for who he is, not for what he

did. The guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing.

*Cruz-Garcia*, 344 F.3d at 955–56 n.3 (internal quotations and citations omitted). Where, as here, the evidence is not introduced against a defendant, but rather is introduced *by* a defendant, the same protective concerns are not implicated.

**2.**

Second, we consider the relevance of the neighbor's prior deportation from the United States. Urias Espinoza sought to introduce evidence that her neighbor had been previously deported from the United States. The defense argued that the neighbor's deportation demonstrated why the neighbor was unable to drive the car himself, and needed to get someone else to do it. As a result of his prior deportation, the neighbor would be unable to legally cross the border on his own. As with the neighbor's convictions, the neighbor's deportation makes it more likely that he used Urias Espinoza as a "blind mule" to smuggle methamphetamine into the United States.

**3.**

Finally, we consider the relevance of the Facebook page and the photographs.**[5]** Urias Espinoza sought to introduce several photographs, as well as a screen shot of a Facebook

---

**[5]** We leave it to the district court on remand to determine whether any statements or other portions of the Facebook page are excludable on other grounds.

page containing an additional photograph of her neighbor. These photographs were used to identify the neighbor and link him to the conviction documents. At trial, the father of Urias Espinoza's boyfriend identified the man in at least one of the photographs as Urias Espinoza's next-door neighbor. The government conceded that the man identified, through witness testimony and photographs, as the next-door neighbor was likely the same man with the criminal convictions. As a result, these photographs make it more likely that Urias Espinoza's neighbor was responsible for the drugs found in her car.

In sum, the rejected evidence would have aided Urias Espinoza in demonstrating that her neighbor had the opportunity, motive, and knowledge to use her as a "blind mule," all of which makes it more likely that he did in fact do so, which in turn would negate Urias Espinoza's knowledge of the drugs in her car. The excluded evidence is relevant and should have been admitted, absent another basis for exclusion.

The district court, however, did not clearly rule on whether the evidence was minimally relevant. Instead, the district court excluded the evidence because it determined the defense's theory was "all speculation," thereby failing to satisfy the rule that "substantial evidence tending to directly connect [the neighbor] with the actual commission of the offense" must be offered to satisfy the threshold standard for admissibility. *Perry*, 713 F.2d at 1449 (citation omitted). But as we have explained, *supra*, "substantial evidence" establishing a link between the third-party and the crime is not a threshold requirement for the admissibility of third-party culpability evidence.

That the defense's theory may be speculative is not a valid reason to exclude evidence of third-party culpability. *See Stever*, 603 F.3d at 754 ("[T]he district court is not free to dismiss logically relevant evidence as speculative."); *Vallejo*, 237 F.3d at 1023 ("Even if the defense theory is purely speculative, as the district court characterized it, the evidence would be relevant."). If "the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt." *Crosby*, 75 F.3d at 1349 (alterations in original) (citing 1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. 1983)). "[I]t is the role of the jury, [and not the district court] to consider the evidence and determine whether it presents all kinds of fantasy possibilities . . . or whether it presents legitimate alternative theories for how the crime occurred." *Vallejo,* 237 F.3d at 1023 (internal quotation marks omitted).

We note that in its colloquy with counsel regarding the disputed evidence, the district court raised other concerns about the evidence's admissibility. However, the court ultimately relied on the wrong standard by excluding the evidence for failing to meet the "substantial evidence" test. Accordingly, the district court abused its discretion in applying the wrong legal standard to exclude relevant evidence of third-party culpability. Under the correct legal standard of relevance, the excluded evidence was not inadmissible for lack of relevance.

## C.

The government argues that even if the district court erred in excluding the evidence of third-party culpability, the error was harmless. We disagree. "In the context of nonconstitutional error in criminal cases we must reverse . . . unless it is more probable than not that the error was harmless." *United States v. Seschillie*, 310 F.3d 1208, 1215 (9th Cir. 2002) (internal quotation marks and citation omitted). "The government bears the burden of persuasion and . . . [i]n cases of equipoise, we reverse." *United States v. Liera*, 585 F.3d 1237, 1244 (9th Cir. 2009) (internal quotation marks and citations omitted).

Here, Urias Espinoza was caught at the border with a car full of drugs, but consistently denied any knowledge of them. Accordingly, the sole issue at trial was whether Urias Espinoza knew she was smuggling methamphetamine, and the excluded evidence went to her knowledge. The government's evidence with respect to Urias Espinoza's knowledge was circumstantial and not overwhelming.

For example, the government presented testimony from CBP Agent Tan who explained that he immediately noticed the back seat was bulging when the car approached the border inspection point. The government argued that because the bulge was so obvious, and because Urias Espinoza regularly drove her car, she would have noticed the bulge. The actual evidence was slightly more complicated than the government represents. On cross-examination, the defense cast doubt on Agent Tan's assessment by eliciting more information than he offered on direct examination, including that the windows to the car were tinted, that he had used a density reading machine and not just his eyes to conclude there was

something hidden in the rear seat, and that he failed to make any mention of the bulging seats in the report that he prepared that day. Therefore, a jury could have reasonably concluded that the bulge was not as obvious as Agent Tan represented during his direct examination testimony. Nonetheless, the jury was not presented with a viable theory of who else may have placed the drugs in Urias Espinoza's car, thus nullifying the effect of any doubt the jury might have had as to the veracity of Agent Tan's testimony.

The government also presented evidence that Urias Espinoza texted someone about transporting a "product," and that Urias Espinoza was looking into getting a pass that would allow her to more expeditiously travel across the border. According to the government, this evidence demonstrated that Urias Espinoza knew she was transporting drugs and was attempting to ensure that she did not get caught. The defense, however, in closing argument, maintained that Urias Espinoza's behavior was entirely consistent with the fact that she frequently traveled to the United States to buy clothes that she could resell in Mexico. In other words, in light of Urias Espinoza's background and profession, there was nothing inherently illicit about her use of the term "product" or her desire to expedite her passage through a border inspection point. Again, a reasonable juror could have concluded that the circumstantial evidence presented by the government was not convincing, but the jury was left without a plausible alternative theory that a person other than Urias Espinoza placed the drugs in her car.

Ultimately, then, although Urias Espinoza was able to poke holes in the prosecution's case and offer innocent explanations for some of her behavior, the exclusion of third-party culpability evidence precluded her from answering the

only question that mattered: "If [Urias Espinoza] did not know there were drugs in the car and did not place them there [herself], who did?" *Vallejo*, 237 F.3d at 1023. As Urias Espinoza's counsel readily admitted to the jury,

> Unfortunately, this is a question I cannot answer for you. It's a question that Ms. Urias [Espinoza] cannot answer for you. Could it have been someone she ordered a product from? Someone who lived in the neighborhood who had access to her car? You heard that it wasn't in a garage. Someone who wanted her to pick up a product in the U.S.? Someone who wanted her to return something for them? Could it have been . . . a combination of people? Sure. I don't know. We can't tell you that.

The government argued to the jury that the defense's argument that "someone set [Urias Espinoza] up is preposterous" and "ridiculous." We agree that the third-party culpability defense has little value when the defendant is unable to point the finger at a particular third-party. Without the ability to identify a particular individual who could have plausibly committed the offense, Urias Espinoza's other efforts to cast doubt on the prosecution's case, as detailed above, rang hollow.

While the claim that Urias Espinoza's neighbor set her up as a "blind mule" was "perhaps not particularly compelling, [it was] certainly plausible." *Liera*, 585 F.3d at 1244. "This is sufficient to defeat the government's harmless error argument." *Id.* The excluded evidence could have provided the missing link to establish reasonable doubt for the jury: an

actual individual who had knowledge, motive, and opportunity to use Urias Espinoza as a blind mule to smuggle drugs into the United States. We therefore conclude that the government has failed to meet its burden of demonstrating that "it is more probable than not that the error did not materially affect the verdict." *Seschillie*, 310 F.3d at 1214 (internal quotation marks omitted). Accordingly, the district court's error in excluding the evidence Urias Espinoza sought to introduce in support of her defense, on the basis of an incorrect legal standard, was not harmless. *See id.*

**REVERSED AND REMANDED FOR RETRIAL.**